# THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL *vs.* ROBERT POOLE & SON COMPANY.

*Taxation—Notice of Increase of Assessment Must be Given—Injunction to Restrain Collection of Illegal Tax—When Property in Territory Annexed to Baltimore City Liable to City Rate of Taxation— Notice of Change in Rate of Taxation.*

Under secs. 150 and 164A, of the charter of Baltimore City (Act. of 1898, ch. 123), the Appeal Tax Court is empowered to increase the valuation and assessment of property in said city for the purposes of taxation upon giving five days' notice in writing to the owner and fixing a day for hearing. Sec. 170 of the charter provides that any person aggrieved because of any assessment may appeal to the City Court which shall ascertain the proper assessment. The assessment of plaintiff's property was increased by the Appeal Tax Court without previous notice thereof having been given to him. *Held*, that he is entitled to an injunction restraining the collection of the tax upon such increased assessment because the failure of the Tax Court to give him the prescribed notice deprived it of jurisdiction to increase the assessment, and the plaintiff was not required first to ask the Tax Court to abate its increase and then appeal from a refusal to do so under sec. 170.

The Appeal Tax Court has no power under the charter of Baltimore City to determine in the first place or to alter the rate of taxation.

Property in the territory annexed to Baltimore City under the Act of 1888, ch. 98, became liable to taxation at the city rate after the year 1900, provided streets had been opened through it and a certain number of houses built in each block. Plaintiff's land, situated in the annexed territory was subjected to the city rate of taxation for the year 1901 by the Appeal Tax Court without previous notice to him that the rate of taxation thereon would be so increased. Upon a bill in equity to restrain the collection of the tax. *Held*,

1st. That when the Appeal Tax Court is informed that property within the annexed territory has been brought within the conditions prescribed by the Annexation Act which warrant the imposition of the regular city rate of taxation, they should first give notice to the owner of their purpose to impose that rate, fixing a time and place of hearing

2nd. That the liability of such property to the city rate of taxation is a question of fact dependent upon the proof as to the opening of streets through it, etc., and plaintiff's remedy for an erroneous classification of his property by the Appeal Tax Court is by a bill in equity since no special tribunal is provided by statute for a determination of the question.

Appeal from an order of the Circuit Court of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Olin Bryan* (with whom was *Wm. Pinkney Whyte* on the brief), for the appellant.

*Randolph Barton, Jr.,* and *Redmond C. Stewart,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This appeal is taken from a decree of the Circuit Court of Baltimore City overruling a demurrer to a bill in equity filed by Robert Poole & Son Company, a corporation, against the Mayor and City Council of Baltimore, and James P. Gorter, City Collector, praying that until all the provisions of sec. 19, of chapter 98 of the Acts of 1888, known as the "Annexation Act," have been complied with, it may be decreed that the plaintiff shall not be liable to pay taxes for city purposes upon its property mentioned in the bill of complaint, at a greater rate than sixty cents per hundred dollars of its assessed value; and that in the meantime, a mandatory injunction, under sec. 177 of Art. 16 of the Code, may be issued requiring the defendants to make out a tax bill against the plaintiff as the owner of said property, at the rate of sixty cents per hundred dollars of its assessed value, and to accept from the plaintiff the tender of taxes lawfully due thereon at said rate, and to give to the plaintiff a full and complete receipt therefor;" also praying an injunction to restrain the sale of said property for non-payment of taxes.

The material averments of the bill are as follows: that the property in question is situated within the territory brought into the city by the Annexation Act, and that the conditions of sec. 19, of that Act, relating to the increase of the *rate* of taxation upon such property, have not been fulfilled, though the bill concedes the right to increase the assessment after the

year 1900, *in the manner* prescribed by the new charter of the city : That no notice was ever given to the plaintiff of the purpose to change or alter the *assessment* of said property, as required by secs. 150 and 164A of the new charter, nor of the purpose to increase the *rate of taxation* for city purposes on said property, and that the first knowledge plaintiff had of either the increase of assesment, or the rate of taxation, was obtained when he applied in 1901 to the collector, for a tax bill for that year : That said property was assessed up to the year 1901, at $116,125, upon which assessment he paid city taxes at the rate of sixty cents per hundred dollars, but that for 1901, without any notice to it, and without its knowledge, the assessment was raised to $137,900, and the rate of taxation to $1.81½ per hundred dollars ; that upon a portion of the property, assessed at $9,667, the city conceded sixty cents to be the proper rate, which has been paid, but that upon the residue assessed at $128,233, the city demands $2,433.21, and has refused from it the tender of the true amount, $804.37.

It is contended by the appellee that the case of *Gittings* v. *The Mayor and City Council*, decided June 18th, 1902, 95 Md. 419, is conclusive of the correctness of the ruling of the Circuit Court of Baltimore City, while the appellant urges that the provisions of sec. 170 of the new charter were not fully brought to the attention of the Court in that case, as they have been in this, and earnestly argues that under that section, the appellee, when he first obtained knowledge of the increased *assessment*, and of the increased *rate of taxation*, upon delivery of the bill for 1901 by the collector, had the right *then* to demand an abatement both of the assessment, and rate of taxation, and the right of appeal to the City Court within thirty days of refusal to make such abatement, and that thus having a clear legal remedy, equity has no jurisdiction to relieve him now.   We are not able however to agree with this view.

Sec. 164A of the new charter gives the Appeal Tax Court the *power* to revise the valuation and assessments of real and personal property in the city, and to lower or increase the same, but as a *condition precedent* to the exercise of such

power, it requires five days' notice in *writing* of such purpose to increase the assessment, to be given to the owner, or person in charge of the property, or if these cannot be reached, then by posting such notice on the land.    This is the *foundation* of the jurisdiction of the Appeal Tax Court, and when the foundation gives way the *superstructure* falls.    We cannot perceive that sec. 170 of the new charter at all touches the *jurisdiction* of the Appeal Tax Court. It deals with questions arising after a *valid*—though an *erroneous* assessment has been made. The remedy against an *invalid* assessment, one made without jurisdiction to make it, is to strike it out, although the result be to lose the taxes for that year; the remedy against an assessment, *valid as an assessment*, but *illegal* because of the manner in which it was made, or erroneous because of under or over valuation, is by application recognizing the *jurisdiction to assess* but attacking the legality or regularity of the form of proceedings, resulting from the conceded jurisdiction.    In *Gittings* v. *Mayor and City Council, supra*, we said, "it is of no avail that the law requires notice to be given of the purpose to alter or change an assessment, if no notice in fact be given, and it cannot be said that a taxpayer is in default for failure to appeal from an increase of his assessment, if he has neither knowledge nor means of knowledge of the purpose to make such increase," and we are still of opinion that this is a correct statement of the law, and the logical and necessary result of the decision in *Monticello Company* v. *The Mayor and City Council of Baltimore*, 90 Md. 416.    Sec. 150 of the new charter bears materially upon this question, and confirms the conclusion reached in the *Gittings'* case.    That section provides that before increasing the assessment of any property theretofore assessed, the Appeal Tax Court shall notify the owner by written or printed summons containing such interrogatories in regard to the property as they may require to be answered under oath, and fixing a day to answer such interrogatories, and to present such proof as the owner may desire.    This section contemplates a *hearing before action is taken* by the Appeal Tax Court, when its mind is open and unbiassed, and not *after*

*action*, when an *ex parte* conclusion has been reached, and the natural and inevitable disposition to sustain the position taken has been aroused.    We have considered this appeal so far as is possible, as if the question were for the first time presented, but we are led irresistibly to the same conclusion reached in the *Gittings' case.*

There is however a branch of the question involved here, which was not involved there, and that is, the right of *The Appeal Tax Court* to increase the rate of taxation, irrespective of the basis of taxation, and as counsel have requested us to state our views upon that branch of the case, we shall do so as briefly as possible.    Section 40 of the new charter requires the Board of Estimates, in each year to procure from the proper municipal department, and to send with the ordinance of estimates to both branches of the City Council, a report showing the taxable basis for the next ensuing fiscal year, and the rate for the levy of taxes sufficient to meet the necessities of the city upon the basis of the ordinance of estimates, and the Mayor and City Council, in the ordinance making the annual levy of taxes, must fix a rate not less than that stated in the said report.    It is thus clear that the Appeal Tax Court, whether with or without notice to the taxpayer, has no power to determine in the first place, or to alter the *rate* of taxation. That can be determined only by the ordinance of the Mayor and City Council, and when so determined, is applicable throughout the city, except as to property exempted from that rate by the Annexation Act.

The evil, or wrong, against which the taxpayer is intended to be protected, and which was denounced in the *Monticello case*, 90 Md. 416, is the increase in his proportionate share of the burden of taxation without notice designating a time and place where he may contest the justice of such increase, and it is not material whether this wrong is worked by an increase in the assessment or in the rate of taxation imposed.  The basis might be lowered, and the rate increased, and yet the final result might be an increase in the party's proportionate share of the burden of taxation.    If the statute law prescribes no particular notice for

this purpose, the law of the land requires reasonable notice of time and place where the party may be heard. There is no hardship imposed upon the city in this requirement, which is only designed to secure orderly procedure, and to give the taxpayer his day in Court, and the city, through its assessment books and tax rolls, has at command every facility for giving such notice.

When therefore the Appeal Tax Court may be informed, or have reason to believe, that any property within the territory annexed under the Act of 1888, has been brought within those conditions of the Annexation Act which will warrant the imposition of the regular city rate of taxation, they should give reasonable notice to the owner, of their purpose to impose this rate, fixing a time and place when he can be heard in relation to the matter. We have not been advised of, and have not discovered, any specific provision of law, prescribing how, and by what authority, property in the annexed territory, which has been brought within the conditions of the Act of 1888, warranting the imposition of the city rate of taxation, is to be put into that category upon the books of the Appeal Tax Court, but it would seem in the absence of such specific provision, that that Court should have power to make such classification. The correctness of such classification, however, is a question of fact dependent upon proof as to the opening of avenues, streets, and alleys through the property and the erection of the prescribed number of houses upon a block as provided in the Annexation Act, and if no tribunal has been provided for the determination of that question, it follows that relief against such erroneous classification can be had only through the restraining power of a Court of equity; and the exercise of that power in cases involving the question of the rate of taxation under the Annexation Act, was sustained in *Sindall's case*, 93 Md. 526; *Goebel's case*, idem, 749; and *Kuenzel's case*, idem, 750, where the injunction was denied only because the amount involved was not sufficient to give a Court of equity jurisdiction.

*Decree affirmed with costs above and below.*

(Decided April 1st, 1903.)