## JOHN WANNENWETSCH ᴇᴛ ᴀʟ. *vs.* MAYOR & CITY COUNCIL OF BALTIMORE.

*Assessments of Benefits for Opening Streets—Irregularities in
the Proceedings—Wrong Advertisement—
Appeal—Injunction.*

The case of *Lauer* v. *Baltimore City,* 110 Md. p. 447, relating
to assessments for benefits in opening streets in the territory
annexed to Baltimore City, followed.

The Commissioners for Opening Streets in Baltimore City acted
in conformity with the statute and ordinances in the matter
of grading and paving a certain street, except that the notice
published by them of the application for the paving, and the
advertisement for bids, and the notice of the apportionment
of the costs upon abutting owners, were published in one
newspaper printed in the English and in one printed in the
German language, instead of being published in two news-
papers in English, as should have been done.  The notice
that persons interested had the right to appeal to the City
Court was published in two newspapers in English as re-
quired by law.  Under the ordinance, an appeal to that Court
would bring up for review all the proceedings of the Commis-
sioners.  *Held,* that a party who neglected to appeal to the
City Court within the prescribed time is not entitled to ask
a Court of Equity to restrain the collection of the benefits
assessed upon him for the paving of the street on the ground
that the proceedings of the Commissioners were irregular, in

that the said notices were not published in two newspapers printed in English.

*Decided June 30th, 1909.*

Appeal from the Circuit Court of Baltimore City (HEUIS-LER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*James J. McNamara,* for the appellant.

*W. H. DeC. Wright,* Assistant City Solicitor (with whom was *Edgar Allan Poe,* City Solicitor, on the brief), for the appellees.

BURKE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore City sustaining a demurrer to the bill of complaint and dismissing the bill. The Commissioners for Opening Streets, acting as the Annex Improvement Commission, under the provisions of the Act of 1904, Chapter 274, and by authority of an ordinance of the Mayor and City Council of Baltimore, approved June 15, 1906, made certain assessments against the property of the appellant which abuts on Millington avenue in that part of Baltimore City known as the Annex. The Mayor and City Council were demanding and attempting to collect these assessments which, as alleged, are unauthorized, illegal and void. The relief prayed for is; first, that the assessments against the appellant's property of his portion of costs for paving, grading and curbing Millington avenue may be decreed to be *ultra vires* and void, and that the assessment and all proceedings against the plaintiff or his property may be enjoined.

The ground upon which this relief is asked is twofold, first, that ordinance No. 151, under which the proceedings were had and the assessment levied, is illegal and void, and, ·secondly, that if the ordinance be valid the relief should be granted, because the Commissioners for Opening Streets failed to publish the notices required by sections 2, 4, 6 and 7 of the ordinance in two newspapers published in the English language. We do not consider it necessary to discuss the first ground upon which the appellant relies, because, in our opinion, the two cases of *Baltimore City* v. *Flack,* 104 Md. 107, and *Leon Lauer* v. *The Mayor and City Council of Baltimore,* 110 Md. 447, demonstrate the validity of that ordinance. The opinion in the *Lauer Case* sets forth clearly the sources of the power in the Mayor and City Council to pass the ordinance. We will, therefore, content ourselves by referring to that opinion and the reasons upon which it is based, in connection with the *Flack Case, supra,* as conclusive against the first objection made by the appellant to the validity of the assessment.

Section 1 of Ordinance 151 provides that at the request of the owners of a majority of front feet of ground binding on the whole or any part of any street, lane or alley, which is now open or may hereafter be opened, in the Annex portion of Baltimore City during the time of the exercise by the Commissioners for Opening Streets of the powers and performance of duty conferred and imposed by Chapter 274 of the Acts of 1904 of the General Assembly of Maryland or ordinances passed or to be passed in pursuance thereof, the said Commissioners for Opening Streets, acting under the provisions of the aforesaid Act and ordinances, may, if in their judgment the public interests will be served thereby, grade, pave and curb such street, lane or alley, or part thereof, at the expense pro rata of the owners of all the property binding thereon, wholly as to sidewalks (being cne-fifth of the whole width on each side of said street), and either wholly or in part as to the residue, in accordance with the following sections of the ordinance. Upon receipt of such application

the Commissioners are required to give ten days' notice in at least two of the daily newspapers published in the City of Baltimore of the fact that the application has been filed, and of their intention to consider the same, and also of the time when and the place where objections to the application will be heard. The ordinance then declares who shall be deemed an owner for the purpose of making the application.

It is then provided that after the contract for the work of grading, paving or curbing has been awarded, *in the manner provided by law,* the Commissioners shall impose the tax upon the property binding on the street. There is no question made as to the method pursued by the Commissioners in this case in fixing the assessment. After the Commissioners have completed their apportionment of costs and expenses to be assessed as aforesaid and a statement thereof, it is their duty to "give notice by advertisement, inserted twice a week for two (2) successive weeks, in two of the daily newspapers published in the City of Baltimore, that such apportionment has been made, and that a statement thereof is on file in the office of the said Commissioners for the inspection of all persons interested therein, etc." It is their duty to attend at the time and place appointed in the notice and to consider all such representations and testimony, verbal or in writing, in relation to any matter in such statement which shall be offered to them on behalf of any person claiming to be interested therein, and to make all such corrections and alterations in the said apportionment and statement as shall be necessary to make the same correct and just, and they may adjourn from time to time, if necessary, to give all persons claiming a review an opportunity to be heard and after closing such review it is their duty to make all such corrections as shall be proper, and to make a correct list of the property and of the owners or reputed owners thereof, liable to pay the assesments in the manner aforesaid, and the amount for which each piece of property or the owner thereof shall be liable, and to deliver to the City Register a duplicate list thereof under their hands together with such explanatory plat or plats, if any,

as may be necesary to designate the property upon which said assessments are levied, which assessments shall be liens on the several pieces of property on which the same shall be respectively assessed.   When said duplicate list shall have been delivered to the said register or deposited in his office, it is his duty to notify all persons interested "by an advertisement to be inserted once a week for four successive weeks in two daily newspapers published in the City of Baltimore, that the said list of assessments or expenditures, plat or plats, if any have been so placed in his office, and that any parties affected thereby are entitled to appeal therefrom by petition in writing to the Baltimore City Court."

Section 9 is as follows: "That any person or persons who may be dissatisfied with any assessment or assessments in which he or they shall be in any manner interested, may within thirty days after the return of the above mentioned proceedings to the City Register, appeal therefrom by petition to the Baltimore City Court, praying the said Court to review the same, and thereupon the proceedings shall be similar to those in the trials of street appeals, and the same right shall be had to appeal to the Court of Appeals."

The record shows that the appellant, together with other property owners in the annex and owning property fronting along Millington avenue, filed an application with the Commissioners for Opening Street to have that avenue graded, paved and curbed.   This application complied with section 1 of Ordinance 151, and the jurisdiction of the Commissioners to proceed with the work attached under that application. The contract for the work was awarded to the Maryland Pavement Company, which completed the work at a cost of $10,365.41.

The notices given by the commissioners of the application for the grading, paving and curbing the street; the advertisement for bids for doing the work; and the notice required by section 6 of the Ordinance were published in one English and one German newspaper.   The notice given by the City Register notifying all persons interested of their right of ap-

peal was published in two newspapers printed in the English
language, and complies fully with the requirements of section
7 of the Ordinance. The objection to the first, second and
third notices is (and that is the only objection that can be
urged) that they were not published in two newspapers
printed and published in the English language. In this re-
spect these notices, under the case of *Bennett* v. *Baltimore
City,* 106 Md. 484, must be held to be insufficient. In that
case, JUDGE SCHMUCKER, after citing a number of authori-
ties in support of the general proposition that, in the absence
of a direction to the contrary, the publication of a notice re-
quired by law to be made must be made in the English
language, said: "These cases all treat the English language
as the official or ordinary language of the country and hold
that a mere direction in the statute that an advertisement be
made in a given number of newspapers must be so construed
as to require the use for that purpose of newspapers pub-
lished in the Enyland language. This proposition applies with
special force to a State like Maryland where from the earliest
colonial times the English language has been employed in the
official proceedings of all departments of the Government."

That was a caes where a taxpayer sought to restrain the
city from *performing* a contract, and in its essential facts was
very different from those disclosed by this record. While the
case settles the insufficiency of the notices to which we have
referred, it does not determine the jurisdiction of a Court of
Equity to entertain this bill, because in that case there was
no tribunal other than a Court of Equity to which the tax-
payer could appeal for redress. The appellant cited and re-
lied upon the case of *Baltimore* v. *Johnson,* 62 Md. 226, where
the Court of Equity restrained the collection of special taxes
and assessments levied for grading and curbing Covington
avenue because of the failure of the City Commissioners to
give the proper notices prescribed by the ordinance. But this
was done upon the ground that there was no appeal provided
for the property owners from the proceedings of the Commis-
sioners. The ordinance under which the proceedings were

taken directed the publication of the notices in three news-
papers. This direction was disregarded by the Commission-
ers. The Court said: "Nothing can be plainer than that ad-
vertising in one newspaper only is not a substantial compli-
ance with this requirement. It is also obvious that this is not
a mere formal or immaterial provision, but a substantial and
important one, and, in fact, one in which the property own-
ers who are required to pay for the work are deeply interested.
The contract to be thus awarded to the lowest bidder deter-
mines the cost of the work and therefore the amount of the
tax to be imposed, for it is only after the contract has been
thus awarded whereby the cost can be ascertained, that the
Commissioner is required by the 8th section of the same ordi-
nance to impose a tax upon the owners of adjacent property
"equal in amount to the whole expense of the work." The
object of advertising for these proposals is to attract the bid-
ders and induce competition in order that the work may be
done at the lowest obtainable price, and this is all in the
interest and for the protection of the taxpayers. No appeal
is allowed to the property owners from any of the proceedings
of the Commissioner under this ordinance, and his only re-
dress against the imposition of an unlawful tax is by resort
to a Court of Equity; and while that Court ought not to
grant relief by declaring the tax illegal and void where there
has been only slight or immaterial omissions or deviations
from the requirements of the ordinance, it must so relieve
where there has been, as in this case, a substantial departure
from a substantial provision introduced for his benefit and
protection. Upon this ground alone the decree appealed from
which perpetuates the injunction must be affirmed."

The cases of *Holland* v. *Baltimore,* 11 Md. 186, and *Balti-
more* v. *Porter,* 18 Md. 284, which the appellant contended
support his contention, rest upon the principle that the City
Commissioner in proceeding with the work acted without any
legal authority, and hence all his proceedings in the premises
were *coram non judice* and void. In *Baltimore City* v. *Grand
Lodge,* 44 Md. 436, the assessments for benefits were made

under a *void* ordinance. In this case, however, the ordinance is valid, and the Commissioners acquired jurisdicton of the subject under the application, and in all they did in the premises have acted within the limits of their authority, and any errors, defects or irregularities committed by them in the exercise of that authority could have been corrected by an appeal by any person interested to the Baltimore City Court, as provided by section 9 of the ordinance.

Where a special and limited tribunal acts within its jurisdiction, and an appeal is provided by the statute to another tribunal in which their action may be reviewed, mere errors, mistakes of judgment or irregularities in their proceedings do not form a foundation for a bill in equity. *Methodist Church v. Mayor and City Council,* 6 Gill, 391; *Hazlehurst v. Baltimore,* 37 Md. 220; *Page v. Baltimore,* 34 Md. 558. It is said in *Page's Case, supra,* that where there is an appeal given to the parties to be affected by proceedings of Street Commissioners any irregularities in the proceedings or in the disqualification of the Commissioners are open upon appeal, and the appellant tribunal is the proper one to review and correct them. In the case of the *Methodist Protestant Church v. The Mayor and City Council of Baltimore,* 6 Gill, 402, a bill for an injunction was filed, in which, among other things, it was charged that the Commissioners for Opening Streets had not given the notice required by law, before proceeding to widen the street in question, and, upon appeal, JUDGE DORSEY, in delivering the opinion of this Court, said: "To persons aggrieved by the proceedings of the Commissioners in cases like the present the legislative enactments upon the subject have provided the tribunal and the means of redress, and there only can it be successfully sought."

"It is a salutary principle of law, that every person is bound to take care of and protect his own rights and interests, and to vindicate them in due season, and in the proper place." *Gott and Wilson v. Carr,* 6 G. & J. 312. And "it is too well settled that a Court of Equity cannot undertake the decision of questions which the law has confided to another

tribunal specially designated to adjudicate them." *Frieden-wald* v. *Shipley,* 74 Md. 225.   There is nothing in the decision in the *Friendenwald Case* in conflict with the principles we have stated.   The broad language used in some portions of the opinion in that case must be read in connection with the precise questions which the Court had under consideration.   What was actually decided in that case is this, first, that the examiner had *exceeded* his authority in a most material respect, viz, in estimating for the cost of building two bridges across the tracks of the Philadelphia, Wilmington and Baltimore Railroad Company; and, secondly, that the statement of damages, benefits and expenses filed by him was so framed as to mislead persons interested.   The Court found as a fact that "information was withheld from them which would probably have induced them to appeal; at all events which was essential to an intelligent determination of the question whether an appeal was necessary for their protection."

In this case the Commissioners confined themselves altogether within the limits of their jurisdiction, and the appellant was fully advised of his right of appeal.   We therefore decide that having failed to avail himself of the appeal provided by law for the redress of the wrong of which he complains, he is without remedy in a Court of Equity.

*Order affirmed with costs.*