## SUPPLEE et al. v. MAGRUDER, Collector of Internal Revenue.

### No. 512.

District Court, D. Maryland.

Jan. 24, 1941.

724

M. Milton Leavitt, Eugene A. Edgett, and Nathan J. Felsenberg, all of Baltimore, Md., for plaintiff.

Bernard J. Flynn, of Baltimore, Md., for defendant.

CHESNUT, District Judge.

This personal federal income tax case involves a comparatively small sum of money, but is of particular practical interest to dealers in real estate. The question involved is whether a purchaser of real estate, who has adjusted the taxes on the property pursuant to the contract of sale, and afterwards pays the whole year's taxes, can properly deduct in his federal income tax return for the year the proportion of the taxes for that year which was allocated to him in the adjustment. It probably will be a surprise to many dealers in real estate to learn that it is the Government's contention that the purchaser may not so deduct his proportion of the taxes, but must capitalize the amount assumed and paid by him as a part of the cost of the purchase. In this case the Commissioner of Internal Revenue disallowed the deductions, the taxpayers paid the deficiency taxes, and after denial of petition for refund, have sued to recover the alleged overpayments. The taxpayers kept their accounts on a cash, and not an accrual basis.

The plaintiff taxpayers in this case, Frederick M. Supplee and his wife, in 1936, and again in 1937, purchased several small apartment houses, in pursuance of what appears to have been a substantial business by them in real estate in Baltimore City, as they own numerous properties of this general class which they hold, operate and manage for a profit. In the case of the several properties which they bought in 1936 and 1937, the taxes and other expenses on the property were adjusted between the seller and the purchasers in accordance with the contract of sale; and thereafter Mr. Supplee paid to the City Collector of Baltimore the full amount of the tax bills on the properties in and for the respective years in which they were purchased. In their income tax returns for these years they deducted from gross income the proportion of taxes allocated to them in the adjustments made at the time of the transfers, but did not include in the amount of the deductions the portion of the tax bill which in the adjustments was allocated to the vendors. It further appears that the latter in their income tax returns deducted only the proportion of the taxes for the year which

had been allocated to them in the adjustments.

It will be sufficient to give the details of one transaction which is typical of all. Sometime prior to May 10, 1936, the taxpayers entered into an agreement, in customary form in Baltimore City, to buy the apartment property known as 2325–2333 Reisterstown Road for $25,000. The contract provided for the adjustment of taxes and other expenses on the property. On May 10, 1936 the transaction was settled and on the settlement sheet the purchasers were credited with the proportion of the taxes both City and State for the whole year of 1936 on the property which had accrued up to May 10th; and thereafter in due course Mr. Supplee paid the tax bills of the property for the whole year. In the settlement other expenses on the property including ground rent and water rent were also adjusted by the seller and buyer. In preparing Mr. Supplee's income tax returns his bookkeeper inadvertently and erroneously failed to make proper distinction between adjustment of taxes and other items and in one case seems to have inadvertently included among taxes deducted a portion or all of the amount allocated to the seller; but these mistakes have now been corrected and, to simplify the accounting problem it will be sufficient to state that it is the uncontradicted testimony in the case that (1), apart from the question as to the deduction of proportioned taxes, the taxpayers have overpaid their taxes for 1936 and 1937 in the aggregate amount of $145.02, by reason of the failure to include among proper deductions various items of ground rent, water rent and other adjustments which constituted properly deductible "expenses"; and (2) if the taxpayers are also entitled to deduct their allocated portion of the adjusted taxes for two years then they are entitled to recover as overpayment the total sum of $793.45 with interest from November 22, 1938. In this respect the testimony has corrected the somewhat higher figure included in a stipulation previously filed in the case.

The applicable statutory provision is Section 23 of the Revenue Act of 1936 (see 26 U.S.C.A. Int.Rev.Acts, page 827), which provides, as far as applicable, as follows:

"In computing net income there shall be allowed as deductions:

"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *

"(c) Taxes Generally. Taxes paid or accrued within the taxable year, except" (the exceptions are not relevant in this case.)

Similarly worded provisions were contained in prior and subsequent Revenue Acts.

If the statute had not specifically provided for deductions of taxes paid, it would seem reasonably clear that the taxpayers in this case would have been entitled to deduct the taxes allocated to and paid by them as an ordinary and necessary expense in carrying on their real estate business, just as they were clearly entitled to deduct the payment of ground rents, water rents and other necessary expenses on the properties, the income from which they of course had to include in their gross income. It is the uncontradicted testimony in this case that by reason of failure to properly itemize certain deductions of ground rent and water rent and possibly other items of expenses, the taxpayers have overpaid their taxes in the amount of $145.02 plus interest. I do not understand that any technical objection with respect to the procedure for refund was made by the defendant in this case to the recovery of at least that much by the taxpayers. However it is argued for the defendant Collector that, as taxes have been specifically provided for in the statute, the question of their deductibility under the facts of this case must be justified if at all by the particular phraseology of the statute with respect to tax deductions. The language of this is exceedingly clear and simple. It permits the taxpayer to deduct "taxes paid or accrued within the taxable year". It is said for the defendant that the alternative of "paid or accrued" has reference to the alternative conditions, whether the taxpayer's return is on a cash or accrual basis; if on the cash basis then taxes *paid* are deductible; and if on accrual basis, then taxes *accrued* are deductible. See United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; Com'r v. Coward, 3 Cir., 110 F.2d 725, 727. It is also perfectly clear that the taxpayers in this case bring themselves precisely within the literal language of the statute in that they did pay the taxes within the taxable year. It is however the contention of the defendant Collector that the phrase "taxes paid" must be construed as if it read "taxes paid if assessed on the tax rolls to the

taxpayer"; and that as so construed the taxpayers in this case are not entitled to the deduction, even though they ask only for the deduction of that portion of the taxes for the whole year which accrued during their ownership of the property, and which of course they had to pay to continue in enjoyment of the property. As I understand it, the position of the defendant is that the taxpayer is not entitled to deduct taxes paid by him by reason of his ownership of the property unless he is *personally liable to the taxing authority* for the tax bill, irrespective of the lien of the taxes on his property. It is the defendant's further position that instead of the owner's deducting the amount of the taxes from his income he must capitalize the taxes so paid as a part of the cost price of the property.

Before beginning the discussion of the point of law thus raised, it is desirable to first refer to the legal incidents of the Maryland taxing system and the customary handling of real estate transactions in Baltimore City. I am referring to these not as necessarily controlling the determination of the particular question, but as a factor to be considered in connection with the defendant's construction of the federal statute. In Maryland taxes on real estate (but not on personal property) become a lien upon the property when due and so continue until paid; (Flack's 1939 Md.Code Art. 81, S. 72); and are also apparently a personal liability of the owner in whose name the property is assessed on the tax rolls on the date of "finality". Md.Code Art. 81, §§ 2(20) and 154; Bassett v. Ocean City, 118 Md. 114, 119, 84 A. 262; Free v. Greene, 175 Md. 36, 41, 199 A. 857, 117 A.L.R. 717; Mayor and City Council of Baltimore v. Perrin, April 4, 1940, 178 Md. 101, 12 A.2d 261. The taxes with which we are here dealing are those imposed on real estate by the State of Maryland, and also those separately imposed under the statutes by Baltimore City. Both classes of taxes become due and payable on January 1st of each year for that current year, although the City taxes are not in default for non-payment until July 1st (after which time if not paid interest and penalties at a prescribed rate accrue thereon), and the State taxes become in default if not paid by January 1st of the succeeding year. (Md.Code Art. 81, S. 74). It is also to be noted that in Baltimore City the date of "finality" with respect to City taxes is October 1st of the year prior to the taxable year. The person who owns the property on October 1st and is assessed for it on the assessment rolls thereby becomes liable for the taxes for the succeeding calendar year, even though he may sell and dispose of the property between October 1st and January 1st, when the taxes first become actually payable. In re Wells, D.C.Md., 4 F.Supp. 329. It is also to be noted, as appears from the uncontradicted testimony in this case, that it is the almost universal custom in Baltimore City, and has been for many years, that as between seller and buyer of real estate, taxes are adjusted to the date of settlement and transfer of the property. That is to say, if the settlement date is July 1st the seller is charged with one-half of the tax bill for the whole calendar year and the buyer with the other half, and so proportionately with respect to settlement at any other date during the calendar year. If the taxes have not been paid by the seller prior to the settlement date the purchaser assumes the whole tax bill and is credited with that proportion of the year's taxes which has accrued up to the date of settlement. If the seller has already paid the taxes for the year he is credited with that proportion of the taxes allocated to the purchaser. It also appears from the testimony in this case of two experienced certified public accountants that for many years past, in preparing income tax returns for their clients, they have habitually deducted taxes as adjusted between seller and buyer as was done in this particular case by the taxpayers.

Counsel for the defendant Collector contends in this case that the taxes as adjusted and paid by the taxpayers were not deductible because (1) the taxes became a lien on the property in the hands of the former owner, and (2) there was no personal liability on the taxpayers for any part of the taxes for the year directly to the local taxing governments. In support of this position reference is made to Treasury Regulations 94, promulgated under the Revenue Act of 1936, Article 34(C)-1 which provides that *in general* taxes are deductible only by the person upon whom they are imposed; and to certain decisions by the Board of Tax Appeals and in the 6th and 8th Circuits which, in general terms, state that taxes assessed and constituting a lien on real estate before a sale may not be deducted when paid thereafter by a purchaser, but must be treated as a part of the cost of the property. Illustra-

tive cases are California San. Co. v. Com'r, 32 B.T.A. 122; Merchants Bank Bldg. Co. v. Helvering, 8 Cir., 84 F.2d 478; Lifson v. Com'r, 8 Cir., 98 F.2d 508; Walsh-McGuire Co. v. Com'r, 6 Cir., 97 F.2d 983. Thus it is succinctly stated in the Lifson case, 98 F.2d page 510, as follows:

"When one purchases land which is subject to a lien for taxes, the subsequent payment of those taxes by the purchaser does not constitute an allowable deduction from gross income, for the reason that the taxes accrued while the land was in other ownership and the payment of them is merely a payment of a part of the cost of acquiring the property."

But it will be found on examination that these cases (with one exception noted) have not dealt with the deduction of taxes adjusted for a current tax year, which is the problem here presented. It is clear enough that unpaid taxes for a *prior* year, which are properly a charge against income for that year, wholly preceding the new ownership, must be treated as a part of the cost, and (as is almost universally the case in Baltimore City) are credited to the purchaser on the settlement sheet at the time of the transfer of the property. We are dealing here only with taxes for a current year as allocated to the seller in proportion to the period of the year for which he has the ownership. In a similar case the adjusted taxes were allowed to the purchaser as a deduction for the current year in John Hancock Mutual Life Ins. Co. v. Com'r, 10 B.T.A. 736; and see Helvering v. Missouri State Life Ins. Co., 8 Cir., 78 F.2d 778, 781; and Com'r v. Coward, 3 Cir., 110 F.2d 725. But more importantly for the instant case, the Circuit Court of Appeals for this Fourth Circuit has very recently decided a case, which on the facts is quite similar to the present case, and the reasoning of which I think supports the view that the taxpayers in this case were entitled to the deductions for taxes paid. Com'r v. Rust, 4 Cir., Dec. 18, 1940, 116 F.2d 636. The case is of course imperative authority' here to the extent that it is applicable.

In the Rust case the taxpayer bought real estate in Washington, D. C. on September 17, 1935, the fiscal tax year being July 1st to June 30th, with tax payments due semi-annually in September and March. The taxes for the fiscal year were adjusted to the date of transfer of the property between the vendor and the taxpayer purchaser in accordance with the contract of sale. The taxpayer deducted the proportion of the taxes paid by him in March, 1936 in his federal income tax return for that year. This was disallowed by the Commissioner, but sustained by the Board of Tax Appeals, and affirmed on appeal to the Fourth Circuit, Judge Soper writing the opinion (Judge Parker dissenting). If the Rust case is distinguishable at all from the present case, the distinction lies only in the difference between the Maryland taxing system and that of the District of Columbia. The differences so far as applicable to this case are (1) although the taxes in Washington are assessed prior to the beginning of the fiscal year they do not become a lien until they are in arrears and proceedings are taken to enforce payment; (2) the owner of real estate is apparently not personally liable for the taxes but only the property itself; and (3) the taxes are payable in semi-annual installments and only the second installment due in March, 1936 was involved in the Rust case. The contention of the Commissioner there, as in this case, was that, as the taxes had been assessed to the prior owner of the property, the purchaser was not entitled to deduct his allocated proportion thereof for the current fiscal year but was obliged to capitalize the amount as a part of the cost price. This contention was definitely rejected by the court, Judge Soper saying with respect thereto in the opinion:

"But this theory is not in accord with the actualities of the ordinary case. * * * Furthermore, the Commissioner's theory does violence to the purpose of the income tax statutes that items of income shall be accounted for in annual periods. Clearly this purpose will not be served if the constantly recurring burden of the tax is refused recognition as an item of current expense and is placed in the category of a capital expense to be reckoned with under the income tax statutes only in the event of sale at some future date."

Again it was said in the opinion:

"Taxes upon real estate constitute an ever recurring burden; and when, as in this case, the property is held as an investment, they are perforce treated as a current expense to be offset against current income. The provision of the agreement of sale that the taxes should be adjusted to the date of sale was therefore natural and proper, since it allotted to each party a part of the burden proportionate to the period during which he possessed the prop-

erty and enjoyed the income. Such an arrangement between buyer and seller is typical, and it would be in accord with the facts even if prior to the sale the tax has not only been assessed but has given rise to a lien. The apportionment of the tax was clearly correct in the transaction under discussion, since no part of the second instalment of the tax could be fairly allotted to the seller and no part of it was collectible by the District during his period of ownership. The burden of paying this instalment was an obligation which passed to the taxpayer with the ownership, in much the same fashion that the benefit of certain covenants is held to run with the land in the law of property; and the burden of the tax rested upon the taxpayer in a very real sense, for a delinquency would have been followed by a forced sale by the tax authorities."

The opinion in the Rust case also discusses and summarizes the prior cases above referred to, points out certain differences between the case under consideration and the prior cases and concludes:

"Whether this attitude should not also be taken in the event of a sale after personal liability on the part of the seller or a statutory lien for the tax has arisen, we have no occasion to decide. The question here is whether, in the absence of personal liability and of a lien, the parties may agree to apportion a tax, not yet payable, to their respective periods of ownership. We think that they may; because such an agreement merely assigns to each party the obligation to bear his own burden of taxation."

It is therefore true that the Rust case is not an expressly controlling authority for the instant case, because the Maryland statutory scheme of taxation differs technically at least from that in the District of Columbia; but a careful reading of the opinion leads me to the conclusion that the reasoning and principle of decision should control this case in favor of the taxpayer.

As pointed out in the Rust case, taxes are an annually recurrent burden on real estate, whether a lien or not. In this respect they are not different from ground rents, water rents and other fixed charges on property. To the extent that they are current they are properly chargeable to maintainance and not to capital by proper accounting practice. They are necessarily a charge against income and not an addition to capital. On the other hand, unpaid taxes for prior years are not properly chargeable to current income for a subsequent year, and, on a change of ownership of property, necessarily constitute a part of the cost of the property. The statutory provision for the deduction of taxes should be applied in the light of the subject matter. The federal income tax is a tax on *net* and not on *gross* income; and the accounting with the government is put on an annual basis. The general purpose of the income tax is to find and tax the true net income as defined in the statute. This is accomplished only when current taxes and similar items are deducted from the current income. When an income taxpayer purchases investment property he is chargeable only with the income subsequently accruing from the property, and current charges against it are properly deductible to ascertain the net income. If the current income is adjusted to the date of transfer, similarly the current charges against the income should be likewise adjusted.

The federal income tax statute allows deduction for taxes paid or accrued during the taxable year. The wording is plain and simple and, in the context of the whole statute, seems to clearly mean that the current tax burden on property, is to be deducted from current income from the property. In specifically mentioning taxes, in addition to current expenses, Congress probably had in mind the fact that expenses generally are deductible only with respect to a business, while taxes may also be deducted if paid on property owned for personal needs or pleasure, as in the case of a dwelling. It is true, as provided in the applicable Treasury Regulation [T.R. 94 Art. 34(C)-1] that in general taxes are deductible only by the person upon whom they are imposed, and this is normally the case. Obviously a gratuitous payment of some other person's taxes would not be deductible by an income taxpayer. But if the relationship of the taxpayer to the property is such that he must, as a practical matter, pay the tax to continue in the enjoyment of the income or use of the property, the statute is gratified because the payment is a necessary charge against the income if any from the property.

The statute does not condition the deductibility of the taxes paid on the ownership of the property at the time of the assessment for local taxes, or on the par-

ticularities of the varying statutory schemes in the several states; and to cut down the taxpayer's right to the deduction by reason of the technical requirements of local taxation seems to contravene the plain words of the federal statute. It also introduces an unnecessary and undesirable lack of uniformity in the administration of the federal statute in the several states. Nor does it necessarily benefit the federal revenue, because, if the purchaser of property must capitalize the current taxes, his profit is less, or loss greater, when he re-sells, and his taxable income is thus di-minished.

It is said for the defendant that in this case the taxpayers have paid the seller's taxes. But this is not so in reality. True the seller remained primarily liable to the local government, but, with respect to the property itself, the purchaser had the direct liability to pay the taxes to save it from tax sale; and legally the purchaser was directly liable to the seller to pay the taxes for the current year which he had assumed in the adjustment. We must bear in mind that we are applying the federal statute, and the accounting is between the taxpayers and the federal government with respect to what is the net income of the taxpayers. The details of the local tax statutes do not control the matter except insofar as they necessarily affect the determination of the net income. That the property was subject to a lien for taxes shows that the purchaser who had assumed the taxes was really the person obliged to pay them to avoid the loss of the property, and in paying them he discharged his own obligation, rather than that of another. In accounting with the federal government, it is immaterial that, with respect to the local taxing authority, the seller was primarily liable, and the purchaser liable over to the seller. The ultimate legal liability for the taxes was clearly on the purchasers in this case; and as they necessarily sustained the burden of the tax payments, there is no reason to deny them the deduction in their income tax accounting with the federal government. It thus becomes clear that the mere fact that the seller was the owner of the property at the time the local tax assessment was made, and therefore the debtor to the local government, as the named owner on the tax rolls, is legally immaterial in the federal tax problem.

I conclude that the plaintiffs are entitled to recover for overpayment of taxes in 1936 and 1937 the sum of $793.45 with interest. Counsel may submit the appropriate order for judgment, with provision for interest in accordance with the specially applicable statute. I assume this opinion will be a sufficient finding of facts and conclusions of law, but if more are desired, they can be submitted for consideration.